UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL D. BRADLEY,

    Plaintiff,

v.

RANDOLPH A. WILLIAMS, ET AL.,

    Defendants.

_____/

Case No. 17-10667

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
MONA K. MAJZOUB

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART THE CITY OF DETROIT'S MOTION FOR SUMMARY JUDGMENT [41] AND GRANTING JOHN STOKES' AND GINO VILLAREAL'S MOTION FOR SUMMARY JUDGMENT [42]**

This case arises from the arrest of Michael Bradley, a paraplegic confined to a wheelchair, for disorderly conduct on March 2, 2015 at the Greektown Casino in Detroit, Michigan. Plaintiff, Michael Bradley, brings this suit under 42 U.S.C. § 1983 for excessive force and false arrest. Plaintiff also brings state law claims of assault and battery, gross negligence, intentional infliction of emotional distress, and negligent hiring, training and supervision. The City of Detroit Police Department, Officer Randolph Williams, Officer Timothy Flake, Officer Gary Posluszny, and Officer Terry Bonds have moved for Summary Judgment [41]. Greektown Casino and Security Supervisors John Stokes and Gino Villareal have also filed a Motion for Summary Judgment [42].

# FACTUAL BACKGROUND

Plaintiff, Michael Bradley, is paraplegic who is confined to a wheelchair. He was arrested on March 2, 2015 at the Greektown Casino in Detroit, Michigan for disorderly conduct. (Ex. B, page ID 448, ticket # U-240-881-15). The incident was captured on casino surveillance footage provided by Defendants. (Ex. L).

At around 12:00 a.m. on March 2, 2015, Bradley left the casino gaming area to go to the food court located outside of the casino entrance. When he saw that the food court was closed, he went around the security ropes and attempted to reenter the casino. (Ex. E, Bradley Dep. 61, page ID 461). Terrence Dysard, a security guard at the entrance post, stopped Bradley and asked for identification. (Id.) Bradley refused, believing Dysard saw him exit. (Id.) "[Dysard] ke[pt] watching me come outside the casino," Bradley testified. "He was staring at me, that's why I don't understand how anything else happened, because he [was] looking directly at me." (Id.). Bradley then requested to speak with a security manager. (Ex. F, Bradley Dep. 65, page ID 464).

At 12:03 a.m. on March 2, 2015, Greektown Casino Security Supervisors John Stokes and Gino Villareal arrived. (Ex. L, 00:03:36, 00:03:50). Stokes asked Bradley what the issue was, and, according to Bradley, he told Stokes that Dysard wouldn't let him enter the casino even though he had already been inside. (Ex. F, Bradley Dep.

66-67, page ID 465-66). Stokes then proceeded to ask for Bradley's identification. (Id. at 466). Bradley complied. (Id.; Ex. L, 00:04:56).

The video footage shows Bradley moving over to the side of the entrance to speak with Stokes. (Ex. L, 00:05:20). When Bradley repositions his wheelchair to face the gaming area, the video shows Stokes stepping out in front of Bradley, as if to block him from entering. (Ex. L, 00:05:49). Bradley says that he began entering the gaming area because he believed the supervisors cleared him. (Ex. F, Bradley Dep. 67, 76, page ID 466, 473). The supervisors claim they refused to let Bradley enter the casino because he called the original security guard a "fat mother fucker." (Ex. B, page ID 442; Ex. C, page ID 454).

Bradley was quarreling with Stokes and Villareal as he wheeled himself away from the gaming area towards the exit. (Ex. L, 00:06:15). When Bradley was almost completely out of the gaming area, he turned his wheelchair around (Id. at 00:06:25). Bradley recounts that one of the managers "stuck his foot down" in front of his wheelchair to stop him from entering the gaming area. (Ex. F, Bradley Dep. 68, page ID 467). The surveillance video reveals Villareal putting his foot down in front of Bradley's wheelchair. (Ex. L, 00:06:23). When Bradley threatened to file a police report, the supervisors informed him that the police were already on their way. (Id.) Officer Williams testified that he received a phone call from Stokes for a "disorderly

person who refused to leave" (Ex. H, Williams Dep. 7, page ID 475). Bradley insisted on waiting for the officers' arrival. (Ex. F, Bradley Dep. 68, page ID 467).

When Officers Randolph Williams and Timothy Flake arrived at the casino around 12:24 a.m. they found Bradley "cussing out the security staff at the entrance of the casino floor." (Ex. B 5, page ID 440). The officers explained that Greektown wanted Bradley to leave the premises and then asked him to leave. (Ex. B 6, page ID 441; Ex. G, Bradley Dep. 76, page ID 473).

Officer Flake told Bradley that "he needed to leave [for the day] or he would be arrested." (Ex. B 2, page ID 437, 439-40; Ex. J, Flake Dep. 26, page ID 481). Flake later claimed that his de-escalation techniques were ineffective and that Bradley "got louder with profanity and threatening comments towards the police and security." (Ex. B 5, page ID 440). "He threatened to come back to shoot me, my partner and the security staff, if we didn't let him enter the casino." (Ex. M, Flake Dep. 10, page ID 489; Ex. B 5, page ID 440). The officers then initiated an arrest for disorderly conduct. (Ex. B, page ID 440; Ex. L, 00:27:19-00:29:04).

Bradley testified that he "pulled up" when the officers grabbed his arms to handcuff him because he has a "bullet in one arm" which restricted his mobility. (Ex. K, Bradley Dep. 124-25, page ID 484-85). The officers eventually managed to handcuff Bradley, and Officer Williams then began wheeling him away from the podium. (Ex. B 2, page ID 445; Ex. M, Flake Dep. 10, page ID 489; Ex. L, 00:29:04).

Officers Williams and Flake struggled to maneuver Bradley in his wheelchair. At first, Flake grabbed Bradley's arms while Williams tilted his wheelchair up, balancing it on its two back wheels. After a few feet of movement, Flake released Bradley's arms and held him by his shoulders. (Ex. L, 00:29:22-00:20:57). Flake grabbed Bradley by his hair several times in an attempt to "try to control him with the use of his dreadlocks." (Ex. M, Flake Dep. 27, page ID 490; Ex. P, Flake Dep. 27, page ID 498; Ex. L, 00:30:44). After being held by or pushed by his shoulders, Bradley fell face first onto the casino floor from his wheelchair. (Id. at 00:33:01).

Bradley remained on the casino floor for 40 minutes—from 12:33 a.m. to 1:13 a.m.— until emergency medical personnel arrived on the scene. (Compl. ¶ 33; Ex. L, 00:33:01-1:13:45). The officers and casino employees made no attempt to assist Bradley. According to the incident report filed by Williams, "there was a need to safely remove Bradley from the casino floor [and he] thought [waiting for EMS to arrive] was the best method to achieve this goal." (Ex. B 4, page ID 439). Officer Williams testified that he was complying with Bradley's requests to not be touched (Ex. O, Williams Dep. 25, page ID 495). At 1:13 a.m., Bradley, still handcuffed, was lifted onto the stretcher by Defendant officers. (Ex. L, 1:13:45).

## Procedural History

Plaintiff filed his complaint on March 3, 2017 [Dkt. #1]. On December 4, 2017, Plaintiff filed a Motion for Leave to file his First Amended Complaint [28].

The Court granted that motion on May 25, 2018 [36]. Discovery closed on November 30, 2018, and, on December 31, 3018, the City of Detroit Defendants filed a Motion for Summary Judgment [41]. The Greektown Casino Defendants filed a Concurrence & Joinder to the City of Detroit's motion on January 2, 2019 [42]. Those motions are fully briefed and were the subject of a hearing on July 30, 2019.

### **LEGAL STANDARD**

"The question on summary judgment is whether the moving party has demonstrated that the evidence available to the court establishes no genuine issue of material fact such that it is entitled to a judgment as a matter of law." *Dobrowski v. Jay Dee Contractors, Inc.*, 571 F.3d 551, 554 (6th Cir. 2009). The moving party has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court must construe the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Kalamazoo Acquisitions, L.L.C. v. Westfield Ins. Co.*, 395 F.3d 338, 342 (6th Cir.

2005). The nonmoving party "may not avoid a properly supported motion for summary judgment by simply arguing that it relies solely or in part upon credibility considerations…[but instead] must present affirmative evidence." *Fogerty v. MGM Group Holdings Corp., Inc*., 379 F.3d 348, 353 (6th Cir. 2004) (quoting *Cox v. Ky. Dep't of Transp*., 53 F.3d 146, 150 (6th Cir. 1995)).

## ANALYSIS

### I.   42 U.S.C. § 1983

At the July 30, 2019 hearing, the Court found that Plaintiff had not provided sufficient evidence that the City of Detroit or its police department could be liable under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 691 (1978). For the reasons stated on the record, the municipal defendant will be dismissed, and the Court need only consider the liability of individual officers.

In order to survive summary judgment, Plaintiff must show that there is at least a material question of fact as to whether "a person acting under color of state law deprived [him] of a right secured by the Constitution or laws of the United States." *Waters v. City of Morristown*, 242 F.3d 353, 358-59 (6th Cir. 2001). Plaintiff must also overcome the hurdle of qualified immunity. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

There are therefore two steps to the Court's analysis. The first asks "whether, considering the allegations in the light most favorable to the injured party, a constitutional right has been violated." *Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 786 (6th Cir. 2012). The second asks "whether that right was clearly established at the time of the encounter. *Id*.

1. The Alleged Constitutional Violations

   i. False Arrest

Bradley was arrested for violating Michigan's Disorderly Conduct statute, which in relevant part reads: "a person who is engaged in indecent or obscene conduct in a public place." M.C.L. § 750.167(f). An arrest violates the Fourth Amendment if it is undertaken without probable cause. *Volticky v. Village of Timberlake*, 412 F.3d 699, 677 (6th Cir. 2005).

Officers Flake and Williams certainly had probable cause that Bradley was engaging in disorderly conduct. The officers arrived at Greektown responding to a call about a "disorderly person who refused to leave." (Ex. H Williams Dep. 475). When they arrived, they found Bradley "cussing out the security staff at the entrance of the casino floor." (Ex. B 5, page ID 440). He refused to leave, though repeatedly asked, and instead only increased the volume and ferocity of his complaints. (Ex. B,

page ID 437, 439-41; Ex. J, Flake Dep. 26, page ID 481; Ex. G, Bradley Dep. 76, page ID 473). As Officer Flake later testified, "he threatened to come back to shoot me, my partner and the security staff, if we didn't let him enter the casino." (Ex. M, Flake Dep. 10, page ID 489; Ex. B 5, page ID 440). This was disorderly conduct, and the arrest itself, along with the subsequent detention, is not actionable under § 1983.

ii. Excessive Force

The manner in which Mr. Bradley's arrest was conducted may be actionable, however. A "claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of [a] person" is evaluated under the Fourth Amendment's "objective reasonableness standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." *Id.* at 396-97. Courts consider three factors in determining whether the totality of the circumstances justify a seizure. They are 1) the severity of the crime at issue, 2) "whether the suspect poses an immediate threat to the safety of the officer or others" and 3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396-97.

The first two steps of the tripartite analysis militate against summary judgment. First, the crime at issue, disorderly conduct, is of minimal seriousness. Second, though Plaintiff did threaten the officers, he was unarmed and in no position to hurt anyone from his wheelchair. Although Officer Flake testified that Bradley threatened to come back and shoot him, Officer Williams admitted that Bradley "wasn't a danger" to them. (Ex. N, Williams Dep. 492).

The third factor implicates questions of disputed fact. A suspect actively resists arrest when he "physically struggles with police, threatens or disobeys officers, or refuses to be handcuffed." *Thomas v. City of Eastpointe*, 715 F. App'x 458, 460 (6th Cir. 2017) (citing *Cockrell v. City of Cincinnati*, 468 Fed. Appx. 491, 495–96 (6th Cir. 2012). Bradley admits to resisting arrest. (Ex. K, Bradley Dep. 126, page ID 486; Ex. L, 00:28:24). Nonetheless, he disputes that his resistance was so active as to justify the level of force used against him.

The video evidence shows Williams, Flake, Stokes, and Villareal collectively working together to apprehend and handcuff Bradley. (Ex. L, 00:28:05). According to Bradley's testimony, he initially "pulled up" when the officers attempted to handcuff him because of an arm injury. (Ex. K, Bradley Dep. 124-25, page ID 484-85). After Bradley was handcuffed, the video evidence appears to show Bradley continuing to physically struggle with the police officers. In what appears to be an

effort to keep Bradley in his wheelchair, Officer Williams tilted the wheelchair back while Flake holds onto Bradley's arms. (Ex. L, 00:29:22-00:29:57).

It is unclear from the surveillance footage whether Bradley's coat was caught in the wheelchair as the Plaintiff suggests, or whether Bradley was using his hands to stop the officers from wheeling him away, as Defendants suggest. (Ex. L, 00:30:27; Ex. M Flake Dep. 48; Ex. N, Williams Dep. 18, page ID 492). Officer Williams stated that Bradley never complained about his coat being caught in the wheel. (Ex. N, Williams Dep. 18, page ID 492). Whatever the case, Officer Flake regained control of Bradley by his hair and appeared to push or hold him by his shoulders. (Ex. M, Flake Dep. 27, page ID 490; Ex. L, 00:30:44).

In light of the video and deposition evidence, both Plaintiff's and Defendants' characterizations of the struggled between Bradley and the officers is plausible. This is not a case, like *Scott v. Harris*, where the video evidence clearly contradicts the non-movant's narrative. *See Harris*, 550 U.S. at 379. Here, the Court cannot conclude that there is no genuine dispute of material facts. The reasonableness of the officers' use of force, in light of Bradley's resistance, is a question for a jury, who will be able to resolve the factual disputes as to how much resistance Bradley deployed and how much force the officers deployed.

2. Qualified Immunity

Plaintiff must prove that the officers violated his "clearly established constitutional rights" to recover money damages. *Pearson*, 555 U.S at 232. An officer who makes a reasonable mistake as to how much force is necessary will still be entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 205 (2001).

Taken in the light most favorable to Plaintiff, the video and testimonial evidence of the officers' rough handling of Bradley show an unreasonable violation of his clearly established rights. "Cases in this circuit clearly establish the right of people who pose no safety risk to the police to be free from gratuitous violence during arrest" *Shreve v. Jessamine County Fiscal Court*, 453 F.3d 681, 688 (6th Cir. 2006). More specifically, the Sixth Circuit has held that officers used excessive force when they attempted to squeeze a paraplegic with muscular dystrophy into a police cruiser, finding "the right of a nonviolent arrestee to be free from unnecessary pain knowingly inflicted during an arrest was clearly established as of…the day the defendants arrested St. John." *St. John v. Hickey*, 411 F.3d 762, 774 (6th Cir. 2005).[1]

---

[1] *St. John* was partially abrogated by *Marvin v. City of Taylor*, 509 F.3d 234, 246 n. 6 (6th Cir. 2007) which recognized that the Supreme Court in *Scott v. Harris*, 550 U.S. 372 (2007) held that the question of whether conduct is objectively reasonable is a matter for the court, not the jury, on summary judgment. *St. John* is no longer good law for its holding that "even if there was evidence of resistance, it would be improper to determine whether the resistance justified the officers' conduct because such a determination is for a jury in the first instance." *St. John,* 411 F.3d at 772. Nonetheless, *Scott* did not weaken the *St. John* Court's holding that it is clearly

The officers' prolonged compression of Bradley's torso and their use of his hair as a restraint was not reasonable, given the triviality of the offense and the harmlessness of offender.

**II. State Law Claims**

1. Claims against Detroit Police Officers

Plaintiffs bring state law counts of assault and battery, gross negligence, and assault and battery against the officers.

    i.    Assault and Battery

"[U]nder Michigan law, an assault and battery claim against a police officer requires proof that the officer's actions 'were not justified because they were not objectively reasonable under the circumstances'" *Bell v. Porter*, 739 F.Supp.2d 1005, 1015 (W.D. Mich. 2010) (citing *VanVorous v. Burmeister*, 687 N.W.2d 132, 142 (Mich. Ct. App. 2004) (overruled on other grounds by *Odom v. Wayne County*, 760 N.W.2d 217 (Mich. 2008))). Because the Court holds that a jury could find that the officers' conduct was objectively unreasonable, it will not grant summary judgment on the assault and battery count. *See Acklin v. Inkster*, 93 F.Supp.3d 778 (E.D. Mich. 2015) (finding that where officer conduct was objectively unreasonable, the plaintiff could proceed with his assault and battery claim).

---

established law that officers use excessive force when they too aggressively handle a wheelchair-bound suspect who poses no threat to officer safety.

Defendants are not entitled to immunity under the Michigan Governmental Tort Liability Act. "To be entitled to governmental immunity for an intentional tort under Michigan law, an officer must establish that (1) he was acting in course of his employment and at least reasonably believed that he was acting within scope of his authority, (2) that his actions were discretionary in nature, and (3) that he acted in good faith." *Odom*, 760 N.W.2d at 228-29.

"Unlike federal law, governmental immunity in Michigan is "subjective in nature." *Smith v. Stoneburner*, 716 F.3d 926, 934 (6th Cir. 2013). An officer does not act in good faith when he acts with "wanton misconduct," which is defined as "conduct or a failure to act that shows such indifference to whether harm will result as to be equal to a willingness that harm will result." *Odom*, 482 Mich. at 475. Taken in the light most favorable to Plaintiff, the evidence suggests that the officers were indifferent as to whether Bradley was ejected from his wheelchair or otherwise harmed during the course of the arrest.

    ii.    Gross Negligence

Gross negligence is defined by statute as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Jennings v. Southwood*, 446 Mich. 125, 136 (1994); M.C.L.A. 691.1407(8)(a). Plaintiff alleges that defendants Williams and Flake recklessly handled him. Plaintiff is not entitled to relief for this tort, however. Relief cannot be granted for a gross negligence claim

that is premised on an intentional act that is the basis of a different state-law tort. *See Wells v. City of Dearborn Heights*, 538 F. App'x 631, 641-42 (6th Cir. 2013) (citing *VanVorous*, 687 N.W.2d at 143).

      iii.    Intentional Infliction of Emotional Distress

Plaintiff brings a count of Intentional Infliction of Emotional Distress (IIED) against Officers Williams, Flake, Bonds, and Posluszny. To support such a claim, he must prove that Defendants' conduct was (1) extreme and outrageous and (2) intentional or reckless, and he must establish (3) a causal connection between the conduct and (4) Plaintiff's severe emotional distress. *Walsh v. Taylor*, 689 N.W.2d 506, 517 (2004). Liability for intentional infliction of emotional distress attaches only when a plaintiff can demonstrate that the defendant's conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.*

Plaintiff bases this cause of action on his allegation that his genitals and anus were exposed while he was left lying on the floor of the casino waiting for the ambulance. This allegation is directly belied by the video, however, which shows that Bradley was not exposed. (Ex. L 1:13:48). Plaintiff never alleged that he asked to be lifted from the floor back into his wheelchair. Indeed, the uncontroverted testimony is that Bradley did not want to be assisted back into his wheelchair. (Ex.

O, Williams Dep. 25, page ID 495). The officers' conduct was thus not so outrageous in character as to give rise to an IIED cause of action.

    2. Claims against Greektown Casino Security Staff

Bradley alleges the Michigan tort of assault and battery against Villareal and Stokes. Plaintiff does not articulate how Stokes' or Villarreal's' minimal role in the early stages of the arrest constituted an assault or battery. Indeed, Plaintiff neither responded to the Greektown Defendants' Motion for Summary Judgment, nor addressed the Greektown Defendants in his response to the City of Detroit Defendants' Motion for Summary Judgment. (See Dkt. # 44). Bradley was a trespasser, and staff were entitled to block his further entrance into the Casino.

Bradley also supports his assault and battery claim with Villareal's alleged kick to his wheelchair. The video evidence contradicts this account. Villareal is clearly seen to place his foot in front of Bradley's wheelchair to prevent his access to the casino. (Ex. L 00:05:07). Unsupported allegations that are clearly disproven by video evidence are not sufficient to resist summary judgment. *See Harris*, 550 U.S. at 378-79. The assault and battery claim against Villareal and Stokes will therefore be dismissed. Since there is no underlying tort, Plaintiff's negligent hiring, training and supervision claim against Greektown Casino necessarily fails as well.

## CONCLUSION

The video and deposition evidence, taken in the light most favorable to Plaintiff, shows that Officers Flake and Williams used excessive force against a wheelchair-bound man who posed a threat only to the convenience and time of casino security and the arresting officers. The evidence does, however, foreclose any cause of action Plaintiff alleges against the Greektown Casino security staff, Officers Bonds and Posluszny, and the Detroit Police Department. All claims against these Defendants are dismissed. The Court also dismisses Plaintiff's claims against Officers Williams and Flake for state law gross negligence and intentional infliction of emotional distress.

**IT IS ORDERED** that the City of Detroit Defendants' Motion for Summary Judgment [41] is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that John Stokes' and Gino Villareal's Motion for Summary Judgment [42] is **GRANTED**.

**SO ORDERED**.

s/Arthur J. Tarnow
Arthur J. Tarnow
Dated: September 9, 2019            Senior United States District Judge